IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

Bridget Gordon,

    Plaintiff,

v.

King Financial Repair LLC,

    Defendant.

Civil Action No.   3:23-CV-99-RGJ

## COMPLAINT

**NOW COMES** Bridget Gordon ("Plaintiff"), by and through the undersigned, complaining of King Financial Repair LLC, ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.,* for Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff is domiciled in Shepherdsville, Kentucky and a substantial portion of the events or omissions giving rise to the instant claims occurred within the Western District of Kentucky.

### PARTIES

4. Plaintiff is a natural "person," as defined by 47 U.S.C. § 153(39).

5. Defendant is a credit repair organization and law corporation that offers its

1

customers the ability to eliminate and resolve their debt issues through Defendant's services. Defendant is a professional corporation organized under the laws of the state of Kentucky with its principal place of business located at 9850 Von Allmen St, Suite 20 Louisville, Kentucky 40241.

6. Defendant is a "person" as defined by 47 U.S.C. §153(39).

7. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

### FACTS SUPPORTING CAUSES OF ACTION

8. In or around June 2020, Plaintiff was interested in improving her credit rating by resolving various debts that were appearing on her credit report.

9. Plaintiff subsequently happened upon Defendant's services.

10. Initially, Plaintiff reached out to inquire information of Defendant's services and what Defendant could promise her in return for her business.

11. After speaking with Defendant and getting an idea of its services, Plaintiff entered into a contract with Defendant for the provision of credit repair services given Defendant's representations that its program would be able to help Plaintiff resolve her debts, increase her credit score within 90 days or guaranteed her money back.

12. Defendant's 90 Day Money Back Guarantee reads:

> 90 Day Money Back Guarantee: King Financial Repair Consumer Division guarantees that if within 90 days of the later of the client signing this contract or paying their retainer fee, and the client has fulfilled all of the following requirements: (a) forwarded credit bureau responses within 5 days of receipt, (b) did not engage in any credit repair efforts before the date of this contract, (c) has had no payment issues, (d) complied 100% with their commitments to the service, and (e) has not had any repairs or deletions, King Financial Repair Consumer Division will refund 100% of any payments made to King Financial Repair Consumer Division. NOTE: If you have

Case 3:23-cv-00099-RGJ   Document 1   Filed 02/28/23   Page 3 of 6 PageID #: 3

less than 3 negative trade lines, the 90 Day money back warranty does not apply.

13. Initially, Plaintiff was explicitly informed that if she paid the initial set up fee of $299, then monthly payments of $147 to Defendant over a period of time, Defendant would be able deliver results such as improving her credit rating, and resolve outstanding debts negatively reporting within 90 days. Plaintiff detrimentally relied on Defendant's promises.

14. Specifically, Defendant promised that the monthly payment would include written disputes to all three major credit reporting agencies to remove any inaccurate and negatively reporting trade line from her consumer reports.

15. After completing some of payments to Defendant, Plaintiff was growing increasingly more disappointed in Defendant's failure to improve her credit rating and remove items from her report, so she expressed her concerns.

16. Specifically, Plaintiff expressed her interest in canceling her contract with Defendant prior to 90 days of enrolled services due to Defendant's failure to remove negatively reporting trade lines or improved her credit rating.

17. Defendant was unable to alleviate Plaintiff's concerns and warned Plaintiff that she would be unhappy with her credit in the future should she decide to cancel her contract.

18. Upon information and belief, Plaintiff had met all the stipulated criteria to receive refund as written in Defendant's 90 Day Money Back Guarantee clause.

19. Furthermore, Plaintiff decided not to cancel her contract until she reached 90 days to allow Defendant to rectify its promise and remove negative items from her report and increase her credit rating.

20. Unfortunately, Defendant failed to remove negative items from her credit report or improved her credit rating within 90 days, so Plaintiff attempted to retrieve her guaranteed refund.

3

21. Despite Defendant's 90 Day Money Back Guarantee, Plaintiff was never refunded her money after Defendant failed to improve her credit rating or remove negatively reporting trade lines.

22. Throughout their dealings, Defendant deceptively and misleadingly strung Plaintiff along, telling her what she wanted to hear in order for Plaintiff to keep making payments, only to turn around and fail to deliver on the promises and representations that induced Plaintiff's continued participation in Defendant's credit repair services.

23. Overall, Plaintiff was promised that her credit rating would increase, but despite paying nearly $700 for incomplete services Plaintiff's credit rating failed to increase.

24. Dissatisfied with the significant sums of money paid for deficient credit repair services, Plaintiff cancelled her contract with Defendant after 90 days.

25. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding her rights.

26. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant for deficient credit repair services, as well as numerous violations of her federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

27. Plaintiff repeats and realleges paragraphs 1 through 26 as though fully set forth herein.

28. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

29. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA,

as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

      a.      **Violations of CROA §§ 1679b(a)(3)-(4)**

30.      The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

31.      Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it provided Plaintiff. In order to get Plaintiff to agree to utilize Defendant's services, Defendant represented that its services would result in an increase in her credit score by reviewing Plaintiff's credit reports and disputing any fraudulent, inaccurate and misleading debts with her creditors; however, Defendant completely failed to follow through on these promises or the services it represented it would perform for Plaintiff.

32.      Moreover, Defendant intentionally misled Plaintiff regarding its 90 Day Money Back Guarantee Clause.

33.      Defendant's 90 Day Money Back Guarantee Clause states that individuals are to be refunded if Defendant is unable to accomplish any repairs or trade line deletions from ones credit

report after 90 days. Defendant failed to refund Plaintiff her money despite not being able to remove negatively reporting trade lines or improve Plaintiff's credit rating.

**WHEREFORE**, Plaintiff, Bridget Gordon, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

DATED: February 28, 2023                                  Respectfully submitted,

*/s/ Chad W. Eisenback*
Chad Eisenback, Esq.
Sulaiman Law Group, Ltd.
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
Fax: (630) 575-8188
ceisenback@sulaimanlaw.com
*Counsel for Plaintiff*