UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | | |
|---|---|---|
| BRIDGET GORDON | ) | |
| | ) | |
| PLAINTIFFS | ) | |
| v. | ) | CIVIL ACTION NO. 3:23-CV-99-RG |
| | ) | |
| | ) | |
| KING FINANCIAL REPAIR, LLC | ) | **Electronically Filed** |
| | ) | |
| DEFENDANT | ) | |
| | ) | |
| _____ | ) | |

## ANSWER AND COUNTERCLAIM

Comes the Defendant, King Financial Repair, LLC ("King"), by counsel, and for its Answer to the Complaint of the Plaintiff, Bridget Gordon ("Gordon") states as follows:

1. The allegations in paragraphs 1, 2, 3 and 4 are legal conclusions for which no answer is required. However, King further states that the statutes cited therein speak for themselves and any characterizations of said statutes that are inconsistent with their express terms are denied.

2. King admits the allegation in paragraph 5 that it is a credit repair organization that is organized under the laws of the Commonwealth of Kentucky with its principal place of business located at 9850 Von Allmen Street, Suite 20, Louisville, Kentucky 40241 and denies the remaining allegations in paragraph 5.

3. The allegations in paragraphs 6 and 7 are legal conclusions for which no answer is required.

4. King is without information sufficient to form a belief as to the truth of the allegations in paragraphs 8 and 9 and therefore denies said allegations.

5. King admits that it spoke with Gordon and entered into a contract with Gordon for credit repair services (the "Contract") but denies the remaining allegations in paragraph 11.

6. With regard to the allegations in paragraph 12, King states that the portion of the contract cited therein speaks for itself and denies that Gordon was entitled to her money back or that she requested her money back pursuant to the 90-day money back guarantee.

7. King denies the allegations in paragraph 13.

8. King admits the allegation in paragraph 14 that King informed Gordon that the monthly payment would include written disputes to all three major credit reporting agencies but denies the remaining allegations in paragraph 14, as King did not guarantee that the credit agencies would remove any inaccurate and negatively reported trade line from her consumer reports.

9. King denies the allegations in paragraphs 15, 16, 17, and 18.

10. King is without information sufficient to form a belief as to the truth of the allegations in paragraph 19 and therefore denies said allegations.

11. King denies the allegations in paragraph 20.

12. King admits the allegation in paragraph 21 that it never refunded Gordon's money but affirmatively states that Gordon was not entitled to a refund under the terms of the Contract. King denies the remaining allegations in paragraph 21.

13. King denies the allegations in paragraph 22 and 23.

14. King admits the allegation in paragraph 24 that Gordon cancelled her Contract but denies the remaining allegations in paragraph 24.

15. King admits that it spoke with Gordon as alleged in paragraph 25 but denies the remaining allegations in paragraph 25.

16. King denies the allegations in paragraph 26.

17. The allegations in paragraphs 28 and 29 are legal conclusions to which no answer is required.

18. The allegations in paragraph 30 are citations to CROA sections 1679(b). King denies said allegations to the extent that they are inconsistent with the express terms of the statute.

19. King denies the allegations in paragraph 31, 32 and 33.

20. All allegations not expressly admitted herein are denied.

## AFFIRMATIVE DEFENSES

1. The Complaint must be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. Rule Civ. Proc. 12.

2. Gordon's claims are barred by the doctrine of laches, estoppel and waiver.

3. Gordon's claims are barred by her unclean hands.

4. The issues raised in Gordon's Complaint have already been decided in *Melinda Spencer, et al. v. King Financial Repair, LLC*, Civil Action No. 3:20:CV-803-DJH. In a Memorandum Opinion and Order entered July 6, 2022, Judge Hale found that it was permissible for a credit repair organization to charge a client on a monthly basis for services that were performed during the previous month and that charges for consultation fees are appropriate. (See, Memorandum Opinion and Order attached hereto as Exhibit 1, p. 6-8). In addition, the Court found that King did not make any

untrue or misleading representations of its goods or services in violation of 15 U.S.C. sec. 1679(b).

5. The Contract between Gordon and King specifically provides that:

   [n]either you nor any "credit repair" company or credit repair organization has the right to have accurate, current and verifiable information removed from your credit report (See, Contract between King and Gordon attached hereto as Exhibit "2", p. 2).

   Thus, Gordon's claims that King guaranteed that certain items would be removed from her credit report must be dismissed as a matter of law.

6. The Contract between Gordon and King specifically provides that King "does not guarantee any specific outcomes or results on behalf of consumer" (Exhibit "2", p. 1).

7. The 90-Day Money Back Guarantee in the Contract only applies if the customer complied with their commitments to King and if the customer has not had any repairs or deletions to his or her credit report (Exhibit "2", p. 6, Sec. I). Gordon did not comply with her commitments under the Contract and Gordon had a deletion from her credit report. Therefore, the 90-Day Money Back Guarantee is inapplicable herein.

## COUNTERCLAIM

1. King is a credit report organization pursuant to the Credit Repair Organizations Act and provides credit repair services to customers by preparing correspondence to credit bureaus to and using its best efforts to request removal of errors, misrepresentations or unverifiable information on the customers' credit reports (Ex. "2", p. 4, Sec. A).

2. The services provided by King also include an initial credit audit and development of a plan to delete, correct or change inaccurate, unverifiable or obsolete items on a customer's credit report. In addition, King creates a case file and sets up an online

portal and helpdesk account. The price of the initial credit audit is $299.00 (Ex. "2", p. 4, Sec. B1).

3. King did not guarantee any specific outcomes or results for its services (Ex. "2", p. 1).

4. Additional services provided by King are the preparation of letters to credit bureaus to request removal of errors, misrepresentations or unverifiable or obsolete information.

5. King customers agree to make monthly payments to King in the amount of $147.00 per month for a minimum of six months (Ex. 2, p. 4, Sec. B2).

6. The Contract provides that if a customer cancels the Contract prior to six months or fails to comply with the terms of the Contract, the fees for King services will be billed at $75.00 per disputed item (Ex.2, p. 4, Sec. B1).

7. The Contract further provides that customers are required to maintain a credit card monitoring service such as Identity IQ so that King can monitor the customers' credit reports (Ex. 2, p. 1).

8. King entered into a Contract with Gordon on or about June 22, 2020 (Ex "2"). On that same date, she set up her account in the King portal and King completed the credit audit or "Analyzer" for Gordon and posted it in her portal.

9. After the credit audit was complete, Gordon paid King $299.00 per the terms of the Contract.

10. On July 5, 2020, King sent out letters to credit bureaus requesting correction or deletion of inaccurate or outdated information.

11. Gordon paid the monthly fee of $149.00 to King on July 23, 2020.

12. On August 23, 2020, King sent out a second round of letters to credit bureaus on Gordon's behalf.

13. Gordon failed to make a monthly payment in August, 2020.

14. Gordon requested her money back per the 90-day money back guarantee. However, she was not entitled to her money back as she had failed to make the monthly payment for August and had failed to maintain credit monitoring, both of which were conditions precedent for the money back guarantee (Ex. 2, p. 6, Sec I).

15. Gordon paid the past-due amount for August in September, 2020.

16. Gordon failed to pay the monthly payment for September, 2020 and failed to make any other payments, thus the Contract was terminated prior the end of the six-month period.

17. Therefore, Gordon is liable to King in the amount of $3,150.00 as there were 42 disputed items on her credit report which are billed at a rate of $75.00 per disputed item pursuant to the terms of the Contract.

18. In addition, Gordon's attempts to make payment to King failed on 11 separate occasions resulting in a charge of $30.00 per failed payment or a total of $330.00 pursuant to the terms of the Contract (Ex. B, p. 5, Section C).

19. Gordon breached the Contract with King and owes King a total of $3,480.00.

20. In addition, King is entitled to recover its legal fees incurred in collecting the amounts due (Ex. B, p. 6, Section I).

WHEREFORE, King requests that:

1. The Complaint be dismissed, with prejudice;

2. It recover compensatory damages on its Counterclaim;

3. It recover its fees and costs incurred in collecting the amounts owed; and

4. Any and all other relief to which King is entitled, both at law and equity.

>Respectfully submitted,
>
>/s/ Jan M. West_____
>Jan M. West
>Goldberg Simpson, LLC
>Norton Commons
>9301 Dayflower Street
>Prospect, KY  40059
>jwest@goldbergsimpson.com
>PH: (502) 589-4440
>FAX: (502) 581-1344
>*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of March, 2023, the foregoing was served via electronic mail to the following:

Chad W. Eisenback, Esq.
Sulaiman Law Group, Ltd.
2500 S. Highland Avenue, Suite 200
Lambard, IL  60148
ceisenback@sulaimanlaw.com

>/s/ Jan M. West_____
>Jan M. West, *Counsel for Defendant*