UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| BRIDGET GORDON )<br>)<br>    PLAINTIFF )<br>)<br>v. )<br>)<br>)<br>KING FINANCIAL REPAIR, LLC )<br>)<br>    DEFENDANT )<br>)<br>_____ ) | CIVIL ACTION NO. 3:23-CV-99 RCJ |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Comes the Defendant, King Financial Repair, LLC ("King"), by counsel, and for its Memorandum in Support of Motion to Dismiss Plaintiffs' Complaint alleging violations of 15 U.S.C. 1679 (known as the Credit Repair Organization Act, hereinafter ("CROA") for failure to state a claim upon which relief may be granted pursuant to FRCP 12.

### A. BACKGROUND FACTS

King is a credit repair organization as defined by 15 U.S.C. 1679(a)(3). The Plaintiff, Bridget Gordon ("Gordon"), acknowledges that she entered into a contract with King for credit repair services (Complaint, par. 11)(A copy of the contract is attached hereto as Exhibit 1).[1]

The contract between King and Gordon (hereinafter the "Contract") provides that King charges a $299.00 fee for an Initial Setup and Credit Audit (See, Exhibit "1", Section B(2)). The work performed by King for the initial fee of $299.00 includes setting up the client's case file; creating an online portal and auditing the client's credit report to develop a

---

[1] Plaintiff's Complaint cites to various provisions of the contract but failed to attach the contract as an exhibit to the Complaint.

plan to "**delete, correct or change inaccurate, unverifiable and obsolete items**" (Exhibit 1, Section B(2)). Gordon does not dispute that King provided these services. Contrary to Gordon's claims, there are no guarantees of specific outcomes and, in fact, there is an initial disclosure statement in bold type on the first page of the contract stating that "King does not guarantee any specific results or outcomes". (Exhibit 1, p. 1).

The Contract provides for monthly payments to be made by the client or, in the alternative, the clients may choose to pay for King's services on an hourly basis or at the rate of $75.00 per disputed item (See, Exhibit 1, Section B). Gordon chose to pay a monthly fee of $147.00 each month to King rather than hourly rates or fee per disputed item and she acknowledges that she made some of the monthly payments (Complaint, par. 15).

The Contract provides in Section B(2) that:

> The Client understands that the monthly fee includes the continuing analysis/audit of up to three credit bureau reports per client, all correspondence associated with the credit improvement process, the review of changes requested by the Client to the Client's credit reports as a result of contracts made on the Clients behalf … phone consultations (up to 20 minutes per month is included in the fee) with client and the continuing planning and creation of documents for the purpose of credit report improvement.

Gordon does not dispute that King sent out letters to credit bureaus in accordance with the Contract and King did, in fact, send out dispute letters in July and August, 2020 (Answer and Counterclaim, par. 10, 12). Instead, Gordon complains that her credit rating did not improve and King failed to have negatively reported trade lines removed from her credit report. Gordon alleges that she requested her money back pursuant to a 90-day guarantee in the Contract. The section of the Contract relies on is the following:

> 90 Day Money Back Guarantee. King Financial Repair Consumer Division guarantees that if within 90 days of the later of the client signing this contract or paying their retainer fee, and the client has fulfilled all of the following requirements: a) forwarded credit bureau responses within five days of receipt, b) did not engage in

> any credit repair efforts before the date of the contract, c) has had no payment issues, d) complied with their commitments to the service, and e) has not had any repairs or deletions, [King] will refund 100% of any payments made to [King]. NOTE; If you have less than 3 negative trade lines, the 90 day money back warranty does not apply.

Gordon made monthly payments for July and August, but failed to make any further monthly payments; therefore, she did not comply with her payment obligations under the Contract (Answer and Counterclaim, par. 11 and 15). Consequently, Gordon was not entitled to a refund under the 90-day money-back guarantee.

Gordon has claimed that King violated the CROA, Section 15 U.S.C. sec. 1679(a)(3) which prohibits any person from "mak[ing] or us[ing] any untrue or misleading representations of the services of the credit repair organization". Gordon also alleges that King violated 15 U.S.C. sec. 1679(a)(4) which prohibits a person from engaging in any act that constitutes or results in the commission or attempt to commit a fraud or deception "with the offer of or sale of the services of the credit repair organization". Gordon claims King violated these provisions by failing to refund her money in accordance with the money-back guarantee and failing to improve her credit score and removing "negatively reporting trade lines" from her credit report (See, Complaint, par. 14, 15, and 16). However, pursuant to the clear and unambiguous terms of the Contract, there were no such representations made to Gordon.

## ARGUMENT

### A. Standard for Motion to Dismiss

A rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. The Court must assume that the allegations in the complaint are true and determine whether the complaint states a valid claim for relief. *Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v.*

*Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). In order to survive a motion to dismiss, "the factual allegations must be enough to raise a right to relief above the speculative level" assuming the allegations are true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the fact that the court must accept the factual allegations as true does not apply to legal conclusions. Mere recitals of the elements of a cause of action which are supported by conclusory statements do not suffice to overcome dismissal. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). If pleadings consist of no more than conclusions, they are not entitled to an assumption of truth. Id. The Court in *Bell Atlantic, supra,* held that:

> A plaintiff's obligation to provide the grounds of his entitled to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Id. at 555.

Gordon's Complaint cites the CROA provisions prohibiting credit repair organizations from engaging in fraud or deception by making untrue and misleading representations of its services. Gordon's complaint completely mischaracterizes King's 90 Day Money Back Guarantee Clause by stating that Gordon is entitled to her money back if there were no deletions from her credit reports. The 90 Day Money Back Guarantee states that Gordon must fulfill several requirements in order to obtain her money back and she does not allege that she met any of these requirements[2]. The Contract specifically states that King does not guarantee any outcomes or results and does not make any express or implied warranties other than those contained in the Contract. Consequently, Gordon's claim that King violated the CROA by promising that it would improve her credit score is contradicted by the clear and unambiguous terms of the Contract.

---

[2] In fact, Gordon only paid King two monthly payments and then terminated the contract so she did not fulfill the payment requirements for the money-back guarantee.

4

### B. Gordon's Complaint Fails to State a Claim Upon Which Relief May be Granted

King asserts that Gordon has misinterpreted the clear and unambiguous terms of the Contract, including the money-back guarantee. First, Gordon did not fulfill the requirements of the 90-day money-back guarantee including remaining current on payment to King. Even if Gordon had completed the requirements, she would not be entitled to her money back as the guarantee does not state that King will increase Gordon's credit stores or cause the credit bureaus to remove negatively reporting trade lines from her credit report. The Contract specifically states that King will assist Gordon in removing "errors, misrepresentations and unverifiable information from her credit report" (Exhibit 1, Section A). Gordon has not alleged that there were any errors, misrepresentations or unverifiable information in her credit report that was not addressed by King with the credit bureaus.

There are no representations elsewhere in the Contract that King would cause Gordon's credit score to be increased or that King would remove negative trade lines from her credit report. The Contract disclosure stated on the first page in bold letters that:

> **CONSUMER hereby acknowledges that [King] does not guarantee any specific outcomes or results on behalf of CONSUMER but contracts to provide the specific list of services as more fully described herein** (Exhibit 1, p. 1).

Section L of the Contract states that "This Agreement represents the entire agreement of the parties with respect to the subject matter hereof. There are no other provisions express or implied which are not contained in this Agreement" (Exhibit 1, Section L).

The Contract specifically spells out what is included in the monthly fee: "the continuing analysis and audit of up to three credit bureau reports per client, all correspondence associated with the credit improvement process, the review for changes requested by the Client to the Client's credit reports …, phone consultations with client …

5

and the continuing planning and creation of documents for the purposes of credit report improvement" (Exhibit 1, Section (B)(2)). Gordon has not alleged that King has failed to perform any of the services specified in the Contract but only alleged that King failed to improve her credit score and to get negative trade lines removed from her credit report. These items were never part of the agreed-upon bargain between King and Gordon. The Contract does not include any such representations or guarantees.

This Court recently issued a Memorandum Opinion and Order specifically finding that King did not make fraudulent misrepresentations to consumers as a matter of law (A copy of the Memorandum Opinion and Order is attached as Exhibit 2, hereinafter the "Spencer Opinion", Civil Action No. 3:20:CV-803-DJH-RSE). Melinda Spencer and other defendants alleged in Counts II and III of their Complaint the same violations of the CROA as alleged by Gordon herein – that King engaged in untrue and misleading representations of its services and attempted to commit fraud or deception (See, Exhibit 2, pp. 10-11). The Court cited cases from other jurisdictions wherein the Courts did find that credit repair organizations had engaged in false and misleading practices, such as guaranteeing that consumers would be approved for loans or that the credit repair organization was a non-profit entity when it was not (Exhibit 2, pp. 11-12).

In this case, the misrepresentations allegedly made by King, i.e., that it would improve Gordon's credit score or cause negative trade lines to be removed from her credit reports, were specifically disputed by the disclosure in the Contract stating that no specific results or outcomes were guaranteed, as well as Section L which stated that there were no representations and warranties by King other than those contained in the Contract. Likewise, the Contract spelled out the services that King would provide in exchange for a monthly fee

and the services did not include improving Gordon's credit score or removing negative trade lines from her credit report.

## **CONCLUSION**

Pursuant to the clear and unambiguous terms of the Contract between King and Gordon, King did not guarantee any specific outcomes or results to Gordon. The Contract between King and Gordon did not state that King's services would increase Gordon's credit score or result in removal of negative trade lines from her credit report. As a matter of law and based on the pleadings herein, Gordon's claims must be dismissed as a matter of law.

Respectfully submitted,

/s/ Jan M. West_____
Jan M. West
Goldberg Simpson, LLC
Norton Commons
9301 Dayflower Street
Prospect, KY  40059
jwest@goldbergsimpson.com
PH: (502) 589-4440
FAX: (502) 581-1344
*Counsel for Defendant*